## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**DONNIE RAY TINKER**

    **Plaintiff,**

**v.**

    **Case No.: 4:18-cv-321-CLM**

**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM OPINION

Donnie Ray Tinker seeks Disability Insurance Benefits (DIB) from the Social Security Administration (SSA). Tinker's qualifying disability shifted somewhat during the proceedings below. Tinker argued to an Administrative Law Judge (ALJ) that he could not work due to severe back pain. Tinker then argued to the SSA Appeals Council that depression and low intellectual capacity precluded his employment. Neither argument was successful.

Tinker now asks this Court to find that (a) the Appeals Council wrongly refused to consider Tinker's new evidence of depression and low intellectual capacity and, when that error is rectified, (b) the combination of his back pain, neck pain, depression, and low intellectual capacity entitles him to DIB. But, as detailed below, the Appeals Council did not err when it refused to consider Tinker's new evidence, and thus this Court cannot combine Tinker's ailments to grant him DIB.

# I. Statement of the Case

## A. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (2019) (Step 1); 20 C.F.R. § 404.1520(c) (2019) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (2019) (Step 3); 20 C.F.R. § 404.1520(e-f) (2019) (Step 4); 20 C.F.R. § 404.1520(g) (2019) (Step 5).

Step 2 is the most relevant step in this case because, as detailed below, the SSA denied Tinker's application because Tinker failed to establish that he suffered from a severe medically-determinable impairment or combination of impairments.

## B. Tinker's Disability (as told to the ALJ)

As noted in the introduction, Tinker initially claimed that his disability was an injured back/neck. The following facts come from Tinker's testimony before the ALJ; the court will address his new evidence to the Appeals Council in subpart D.

Tinker worked for 12 hours per day while suffering from back and neck pain. Sometime before April 2011, Tinker stopped working his 12-hour-per-day job and began working 16 hours per week doing building maintenance.[1] Tinker's mother agreed to financially support Tinker after he switched jobs.

On August 18, 2010, Tinker sought treatment from a chiropractor. The chiropractor took x-rays of Tinker's spine, which showed spurring and a "possible" fracture. The chiropractor told Tinker that he would not adjust Tinker's neck unless Tinker saw a medical doctor. The next day, Tinker reported that his neck felt better and was just a little sore. One week later, he reported that his back was okay. He returned to the chiropractor, however, in October and November 2010 and complained of increased pain. The chiropractor again advised Tinker to see a medical doctor, but he did not.

In April 2011, a tornado struck Tinker's home and his mother's adjacent home. Tinker survived; his mother and brother did not. Tinker's back pain

---

[1] Subsequent evidence suggests that Tinker ended his full-time employment in 2007 and his part-time employment in 2008 or 2009. *See* R. at 50, 102-03.

intensified after the tornado.  Tinker began taking 16 Advil pills per day.    Still, Tinker did not visit a medical doctor, only his chiropractor.

Tinker's last day insured was June 30, 2012.

## C. Tinker's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages:  (1) Initial determination, including reconsideration, (2) review by an ALJ, and (3) review by the SSA Appeals Council.  *See* 20 C.F.R. § 404.900(a)(1-4) (2019).  Tinker applied for DIB on February 24, 2015, and the SSA initially denied his claim on March 27, 2015.

Tinker then requested a hearing with an ALJ, which he received on September 1, 2016.  In advance of the hearing, Tinker informed the ALJ that he suffered from "the following severe impairments: back and neck problems, hypertension, headaches with difficulty walking due to back, dizziness and SOB[.]"  R. at 240. At the hearing before the ALJ, Tinker testified to the facts outlined above, and he presented evidence of the chiropractor's August 2010 x-ray.

At the end of the hearing, the ALJ told Tinker that, unless Tinker could provide an x-ray reading from a medical doctor that established a severe injury, "then it's going to be a non-severe denial, step 2." R. at 113.  The ALJ noted that the reading must come from a "medical doctor . . . not a chiropractor."  *Id.*  The ALJ granted Tinker 30 days to have a doctor review his x-rays, so that he might avoid the

Step 2 denial.

Tinker did not provide any additional evidence to the ALJ. On March 15, 2017, the ALJ issued an opinion denying Tinker's application. R. at 8-19. At Step 1, the ALJ determined that Tinker was not engaged in substantial gainful activity, and thus his claim would progress to Step 2. R. at 13.

At Step 2, the ALJ determined that, although Tinker suffered from "degenerative disc disease of the cervical spine and lumbar spine," Tinker failed to establish that he suffered from a severe medically-determined impairment or combination of impairments. *Id.* To support this finding of non-severity, the ALJ noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" R. at 15. The ALJ noted that Tinker had not sought medical assistance, despite his chiropractor's statements, and that Tinker said that his back and neck were "okay" shortly after his initial visit. *Id.* The ALJ also noted that when Tinker finally had a medical doctor take and review x-rays in 2015/2016—well after Tinker's last date insured in June 2012 (*i.e.* the end of the relevant time period)—"there were no significant findings on those x-rays." *Id.* Furthermore, the ALJ noted that Tinker failed to have a doctor review the chronologically relevant x-rays taken by Tinker's chiropractor in August 2010, despite the ALJ's advice to do so. *Id.*

As she had at the hearing, the ALJ also noted that the Social Security Regulations require "acceptable medical sources" to be the basis of a medically-determinable impairment and chiropractors are not considered an acceptable medical source. *Id.* (citing 20 C.F.R. § 404.1513(a) and Social Security Rule 06-03p).

### D. The Appeals Council's Decision

The SSA Appeals Council will review an ALJ's decision only for one of the following five reasons:

1. The ALJ abused his discretion;

2. The ALJ made an error of law;

3. The ALJ's findings/conclusions are not supported by substantial evidence;

4. The case presents a broad policy or procedural issue that may affect the public's interest; and/or

5. The Applicant submits to the Appeals Council additional evidence "that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."

20 C.F.R. § 404.970(a) (2019). If an Applicant fails to establish one of these five reasons for review, the ALJ's decision becomes the final decision of the SSA Commissioner.

Tinker appealed the ALJ's decision pursuant to the 'new evidence' provision and offered the following new pieces of evidence to support his appeal:

1. Tinker's middle school and high school records from 1965 to 1973;

2. A statement from nurse practitioner Sarah Gilbreath, dated July 26-27, 2017;

3. A psychological evaluation by David Wilson Ph.D, dated July 24-25, 2017;

4. Records from CED Mental Health, dated May 25 to July 27, 2017; and

5. Medical records from Huntsville Hospital, dated October 23-26, 2015.

Generally, Tinker argued that this new evidence established that he suffered from depression and low intellectual functioning, on top of his previously-disclosed back pain, and that this combination of impairments warranted disability benefits.

The Appeals Council refused to review the ALJ's decision because none of Tinker's new evidence met the CFR standard. Specifically, the Appeals Council refused to consider the 2015 Huntsville Hospital records and the 2017 CED Mental Health Records because, in the Council's opinion, this evidence related to events that occurred after June 30, 2012—*i.e.* Tinker's last day insured. R. at 2. The Appeals Council refused to consider the remaining three pieces of new evidence (*i.e.* Tinker's school records, Dr. Wilson's report, and Nurse Gilbreath's report) because, in the Council's opinion, none of those pieces of evidence would have changed the outcome of the ALJ's decision. *Id.*

Because the Appeals Council refused to review the ALJ's decision, the ALJ's opinion is considered the final decision of the SSA Commissioner. R. at 3. Tinker

asks this Court to review the Commissioner's final decision, plus certain decisions made by the Appeals Council. *See* 20 C.F.R. § 404.900(a)(4) (2019) (allowing claimants to seek district court review of the Commissioner's final decision if all stages of SSA review are completed).

## II. Legal Analysis

Tinker raises five arguments in his brief to this Court, *see* Tinker Br. 14-34, and the Court addresses them in the order presented.

### A. The Appeals Council Properly Refused to Consider Tinker's New Evidence.

Tinker first argues that the Appeals Council wrongly refused to consider his new evidence—*i.e.* evidence that he did not present to the ALJ. *Which* evidence, however, is up for debate. In his argument headings, errors of law, and table of contents, Tinker limits his argument to two of the five pieces of new evidence: Dr. Wilson's examination and the CED Mental Health Center Report. *See* Tinker Br. 1, 2, 14; Tinker Reply Br. 1. But Tinker does not make arguments tailored to either of these pieces of evidence. Instead, he block-quotes caselaw and makes general statements that could equally apply to all five pieces of new evidence.

The Commissioner responded by defending the Appeals Council's decision regarding all five pieces of new evidence. Comm'r Br. 4-12. This Court held oral argument and questioned Tinker about all five pieces of new evidence. Oral Argument Tr. 8-16. So, in an abundance of caution, the Court will review, *de novo*,

the Appeals Council's decision not to consider any piece of Tinker's new evidence.

1. <u>Dr. Wilson's Evaluation</u>:  David Wilson is a licensed psychologist.  Dr. Wilson evaluated Tinker on July 24, 2017—well after Tinker's last insured date (June 30, 2012) and shortly after the ALJ's decision (March 15, 2017).  Dr. Wilson diagnosed Tinker with three impairments: (1) major depressive disorder, recurrent PTSD, (2) intellectual disability, and (3) lumbar problems with chronic pain.  R. at 52.  Dr. Wilson opined that the combination of these issues causes Tinker to "have a great deal of difficulty maintaining any type of job."  *Id*.

Again, the Appeals Council will only review evidence "that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a) (2019).  The Appeals Council refused to consider Dr. Wilson's evaluation because it found that "this evidence does not show a reasonable probability that it would change the outcome of the [ALJ's] decision."  R. at 2.

This Court agrees.  The ALJ knew about Tinker's back pain issues and told Tinker and his representative at the 2016 hearing that, unless Tinker submitted an x-ray reading from a "medical doctor," she must rule against Tinker in Step 2.  R. at 113.  But as Tinker's counsel acknowledged to this Court, Tinker offered "no additional evidence on back problems" to the ALJ or the Appeals Council, Oral

Argument Tr. 25, as Dr. Wilson's report simply recites what the ALJ already knew. Accordingly, there is no reasonable probability that Dr. Wilson's statements regarding back pain would have changed the ALJ's decision.

Nor would Dr. Wilson's diagnosis of intellectual disability. As this Court noted during oral argument, Tinker has worked many jobs despite his alleged intellectual deficiencies, including work at a furniture store, a flooring company, a paper company, a spinning mill, and an apartment complex (as a maintenance man). Oral Argument Tr. 11. In response, Tinker's counsel agreed that Tinker's intellect did not prevent him for sustaining gainful employment: "He has excelled really despite his low IQ, so I believe the depression would be the winning argument as opposed to the low IQ." *Id.* at 12. In light of the evidence and counsel's concession, there is no reasonable probability that Dr. Wilson's opinion regarding Tinker's intellect would have changed the ALJ's decision.

Finally, Dr. Wilson's diagnosis of depression also fails. For starters, Dr. Wilson's depression diagnosis is temporally problematic. Tinker's date last insured was June 30, 2012; thus, any impairment after June 30, 2012 would have been irrelevant to the ALJ's decision process. *See, e.g.*, R. at 105-06. (ALJ reminding Tinker's representative that she must confine questions to the period before June 30, 2012). Yet, Dr. Wilson's evaluation and conclusion is based in the present—*i.e.* July 2017. *See* R. at 48-52. Particularly, Dr. Wilson concluded that Tinker was a

presently "very depressed and also highly anxious individual," who "would have a great deal of difficulty maintaining any type of job" because Tinker's "ability to withstand the pressures of day to day occupational functioning *is* highly impaired." R. at 52. (emphasis added). Dr. Wilson did not make any conclusions regarding the impact of Tinker's depression in 2011-12 on Tinker's ability to sustain employment in 2011-12, nor does his evaluation suggest that Dr. Wilson reviewed any records from that relevant time period. Accordingly, there is no reasonable probability that the ALJ would have considered Dr. Wilson's opinion, much less used it as the basis for finding disability in 2011-12. *See Whitton v. Comm'r, Soc. Sec. Admin.*, 643 F. App'x 842, 847 (11th Cir. 2016) (holding that an ALJ properly gave no weight to an opinion "rendered after" the claimant's date last insured and that "did not address the severity of [the claimant's] conditions during the relevant time period").

Second, the evidence suggests that back pain—not depression—kept Tinker from working in 2011-12. Tinker quit working full time due to his back pain in 2007 (R. at 50, 102-03), and then Tinker quit has part-time job as a maintenance man in "2008 or 2009," in part, because "he had gotten to where he could not physically do the job." R. at 50; *see also* R. at 102-03. That means that Tinker quit working due to his back pain four years before the tornado killed his family—*i.e.* the event that triggered Tinker's depression.

Third, and perhaps most telling, is that Tinker himself maintains that he cannot

work due to back pain, not depression. As detailed above, Tinker told the ALJ that he quit working in 2007, and then again in 2008-09, due to back pain. R. at 102-03. When asked during the ALJ hearing why he didn't presently work (in 2016), Tinker responded, "Because I'm having too much pain. I can't bend over. If I get down, I have to – I could put my knees on the ground or floor and I have trouble getting back up." R. at 103. In May 2017, Tinker told his therapist that "herniated disks in his back keep him from being able to work[.]" R. at 43.

As for his depression, Tinker told Dr. Wilson that it was because he "can't do nothing." R. at 50. Tinker also told Dr. Wilson that he is depressed "most of the time" due to "[n]ot knowing how I will pay my bills." *Id.* In other words, Tinker told Dr. Wilson that his lack of employment caused his depression, not the other way around. This fact is bolstered by Dr. Wilson's notes that Tinker "presented with neat hygiene and appearance;" his "thought processes were in tact;" and "he was cooperative and respectful throughout." *Id.* Furthermore, Tinker told Dr. Wilson that he could "drive some" and that "if I feel good, I will get out and piddle with the lawnmower." Such statements bolster a determination that Tinker's back pain—not his depression—impairs his ability to work.

For these reasons, individually and collectively, the Appeals Council correctly determined that there is no reasonable probability that Dr. Wilson's evaluation would have changed the outcome of the ALJ's decision.

2.  <u>The CED Mental Health Center Records</u>:  Tinker was referred to the CED Mental Health Center in May 2017 regarding his depression.  Tinker presented the therapist's intake evaluation to the Appeals Council as new evidence of his depression.  R. at 34-47.  Like Dr. Wilson, the CED therapist diagnosed Tinker as "major depressive" (R. at 47), and recommended that Tinker continue seeing a physician and therapist.  *Id.*

The Appeals Council refused to consider the CED evaluation because, in the Council's opinion, the CED evaluation presented no evidence regarding the relevant time period of April 2011 to April 2012.  R. at 2.  This ruling is understandable.  Like Dr. Wilson's report, the CED evaluation speaks in present tense—*i.e.* it discusses Tinker's present (May 2017) issues with depression and diagnoses Tinker as presently major depressive.  The CED therapist made no findings regarding Tinker's level of depression in 2011-12; nor did she opine whether Tinker's depression affected Tinker's ability to maintain gainful employment in 2011-12.

That said, as the Commissioner conceded during oral argument (Oral Argument Tr. 20-21), the CED evaluation does contain factual evidence regarding Tinker's issues with trauma/depression after the 2011 tornado.  For example, the evaluation contains evidence that, to deal with his post-tornado depression in April 2011, Tinker "started excessively drinking" (*i.e.* "he used to drink 1/2 gallon of liquor a day").  R. at 34.  Accordingly, this Court disagrees with the Council that the

entirety of the CED evaluation was not chronologically relevant.

But this error does not warrant reversal or remand because there is no reasonable probability that presenting the CED evaluation to the ALJ would have changed her opinion. *See* 20 C.F.R. § 404.970(a) (2019). The CED evaluation suffers from the same defect that plagues Dr. Wilson's report—*i.e.* it fails to tie Tinker's post-tornado depression to his inability to work in 2011 and 2012.

To the contrary, the CED evaluation bolsters the fact that Tinker's job-related impairment was his back pain, not his depression. For starters, Tinker told the therapist "that he has trouble with his hip and back but that he does not have mental health problems" and that he had come "to get medicine to help with his hip." R. at 34. When the therapist informed Tinker that he was being evaluated for depression, not hip or back pain, Tinker said that he was depressed "because he doesn't have any money to pay his bills; he doesn't have any friends; his family rarely visits him; and he doesn't have any money to do anything or anything that he necessarily wants to do." R. at 34. Again, Tinker's own words indicates that Tinker is depressed because he does not have a job; not that he cannot get a job due to his depression. In fact, Tinker told the therapist that he has held "other odd jobs," including presently (*i.e.* May 2017) "working on weedeaters and lawnmowers when he can." R. at 35.

Most importantly, Tinker did not say that his depression prevented him from working at any point, including the relevant time period of April 2011 to April 2012.

Rather, Tinker told the therapist that "herniated disks in his back keep him from being able to work and denied disability." R. at 43.

Because the CED evaluation contains no evidence that depression prevented Tinker from working in 2011-12, and it contains no new evidence regarding Tinker's back pain in 2011-12, there is no reasonable probability that its introduction would have changed the ALJ's decision to deny benefits in Step 2.

3. <u>Nurse Gilbreath's evaluation</u>: Nurse Practitioner Sarah Gilbreath saw Tinker on June 26, 2017 and completed a 2-page evaluation form. R. at 90-91. Like Dr. Wilson and the CED therapist, NP Gilbreath determined that Tinker suffered from depression. R. at 91. Also like Dr. Wilson and the CED therapist, NP Gilbreath did not opine whether Tinker's depression in 2011-12 prevented Tinker from being gainfully employed in 2011-12. R. at 90-91.

As an initial matter, Tinker failed to make an argument in his brief or his reply brief that specifically addresses the Council's decision not consider NP Gilbreath's evaluation. And, unlike Dr. Wilson's report and the CED evaluation, NP Gilbreath's evaluation is absent from Tinker's list of "errors of law" and his argument headings. Accordingly, the Court finds that Tinker has waived any argument that the Appeals Council erred in its decision regarding NP Gilbreath's evaluation.

That said, even if Tinker preserved the argument, it would fail. The Appeals Council refused to consider NP Gilbreath's evaluation because, in the Council's

opinion, there was no reasonable probability that NP Gilbreath's evaluation would have changed the ALJ's decision. R. at 2. This Court agrees for three reasons. First, a nurse practitioner is not an acceptable medical source. *See* 20 C.F.R. § 404.1513(a) (2019). The ALJ made this point regarding the chiropractor's x-rays (R. at 113), and she surely would have made the same point regarding a nurse practitioner.

Second, NP Gilbreath's depression diagnosis suffers from the same problem as Dr. Wilson's: She fails to opine that Tinker's depression in 2011-12 prevented Tinker from being gainfully employed in 2011-12. That NP Gilbreath deemed Tinker to suffer from depression in 2017 would be irrelevant to the ALJ's decision.

Third, NP Gilbreath's evaluation contains information that cuts against a finding that Tinker's depression prevents him from being gainfully employed. For example, NP Gilbreath determined that:

- Tinker could understand and carry out short, simple instructions;

- Tinker could maintain attention and concentration for at least two hours;

- Tinker could interact with supervisors and co-workers; and,

- Tinker could sustain an ordinary routine without special supervision.

R. at 90. For these reasons, individually and collectively, the Appeals Council correctly determined that there is no reasonable probability that NP Gilbreath's evaluation would have changed the outcome of the ALJ's decision.

4. <u>Huntsville Hospital Records</u>: Tinker visited Huntsville Hospital in October

2015 to have minor surgery on his thumb, which he cut while using a circular saw approximately 10 days earlier. R. at 55-89. The Appeals Council refused to consider the hospital records because they did not relate to the relevant time period of April 2011 to April 2012. R. at 2. The Court agrees. Nothing in these records appear to relate to the question of whether Tinker suffered an impairment in 2011-12 that prevented him from being employed in 2011-12.

Furthermore, Tinker failed to make an argument in his brief or his reply brief that points to what part of the hospital records are chronologically relevant. Accordingly, the Court finds that Tinker has waived any argument that the Appeals Council erred in its decision regarding the hospital records.

Finally, the Court notes that, even if this argument was preserved and chronologically relevant, evidence that Tinker required surgery because he cut himself with a circular saw would not have changed the outcome of the ALJ's decision. If anything, that Tinker was using a circular saw cuts against the argument that he could not find gainful employment.

For these reasons, individually and collectively, the Appeals Council correctly refused to consider the Huntsville Hospital records.

5. <u>Tinker's School Records</u>: Tinker introduced his grade school records to the Appeals Council to argue that he suffered from low intellectual capacity. R. at 28-31. The Appeals Council refused to consider this evidence because, in the

Council's opinion, there was no reasonable probability that introducing Tinker's school records would have affected the ALJ's decision.  R. at 2.

This Court finds that Tinker has waived this argument for two reasons.  First, Tinker failed to make an argument in his brief or his reply brief that specifically addresses the Council's decision to not consider his school records, and Tinker failed to mention his school records in his list of "errors of law" and his argument headings. Second, at the oral argument, Tinker essentially conceded that his low intellect argument was meritless:

> THE COURT: The problem I think for your case, though, is when you talk about low IQ, he had the low IQ, according to your records, since he was in elementary school. He's had it his whole life. But as you just admitted to me, he has a very good work history. I mean, I listed all of the things that he's done over his lifetime, and it includes, he worked for a furniture store, a flooring company, a paper company, a spinning mill, he was the maintenance man at an apartment complex. I mean, he even admitted in these records that he was still working on weedeaters, lawnmowers and other equipment. It would appear that throughout his whole life his low IQ has not stopped him from holding a job.

> MR. ALLENSTEIN: He has excelled really despite his low IQ, so I believe the depression would be the winning argument as opposed to the low IQ.

Oral Argument Tr. 11-12.

If it is not waived, Tinker's argument is without merit. As demonstrated by the above quote, Tinker has held many jobs during his life, despite any intellectual limitations.  Accordingly, the Appeals Council rightly determined that evidence of Tinker's school records from 1965 to 1973 would not have changed the ALJ's

decision regarding Tinker's ability to be gainfully employed in 2011 and 2012.

* * *

In summary, the Appeals Council correctly refused to consider any of Tinker's five new pieces of evidence. While each piece of evidence suffers from its own deficiencies, each shares a common problem—*i.e.* the failure to contain evidence and/or a proper medical opinion that Tinker's ailments in 2011-12 prevented him from working in 2011-12. Instead, Tinker's new evidence appears focused on an argument that Tinker's back pain and depression have worsened over the years. *See* R. at 106 (Tinker testifying to the ALJ that his back pain was "probably a six and seven" out of ten in 2011-12 but had "gotten worser and worser" in the years since); Oral Argument Tr. 13-14 (Tinker's counsel affirming to this Court that his back pain and depression had worsened since the ALJ proceedings). But, as the Eleventh Circuit has noted, evidence of deterioration after the ALJ's decision "may subsequently entitle a claimant to benefit in a new application, but it is not probative of whether a person was disabled during the specific period under review." *Leiter v. SSA Commissioner*, 377 Fed. Appx. 944, 950 (11th Cir. 2010).

## B.  The Appeals Council gave sufficient reasoning in its written decision.

Tinker argues that his case must be remanded because the Appeals Council "offers no material basis for affirming the [ALJ's] decision" and instead gave "perfunctory adherence" to the ALJ's decision. Tinker Br. 30.

The Eleventh Circuit has stated that "the Appeals Council is not required to

explain its rationale for denying a request for review[.]" *Mitchell v. SSA Commissioner,* 771 F.3d 780, 784 (11th Cir. 2014). As long as the Council's decision reflects that the Council "adequately evaluated" an applicant's new evidence, *id.*, remand for a more detailed opinion is unwarranted.

This Court is satisfied from reading the Appeals Council's decision that the Council adequately evaluated Tinker's new evidence. Granted, the Council's analysis is short, but it plainly demonstrates that the Council reviewed each of the five new pieces of evidence and provided a CFR-based reason for refusing to reconsider the ALJ's decision in light of each new piece of evidence. *See id.*

Tellingly, the Court and the parties were able to hold oral argument on the Appeals Council's rationale for refusing to consider each piece of evidence, and this Court was able to evaluate the Council's rationale regarding each piece of evidence in Part A of this decision. That being the case, remanding this action to require the Appeals Council to provide a more detailed analysis would be pointless.

## C. Substantial evidence supports the Commissioner's denial of benefits.

Tinker next argues that "the ALJ decision was not based on substantial evidence when the submissions to the Appeals Council are considered." Tinker Br. 32. In other words, Tinker argues that when this Court adds (a) the five new pieces of evidence he presented to the Appeals Council to (b) the testimony and evidence provided to the ALJ, the Court must determine that benefits are warranted. Tinker

clarified his "ALJ evidence + Appeals Council evidence" argument as follows during the oral argument before this Court:

> MR. ALLENSTEIN: So we are not challenging the ALJ decision, and now the question is, based on the whole record, is there a – is the decision – is the denial based on substantial evidence. And so now you have to consider what's submitted to the Appeals Council.

Oral Argument Tr. 25.

As detailed in Part A of this opinion, the Appeals Council rightly determined that Tinker's five new pieces of evidence failed to meet the CFR requirement that additional evidence is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a) (2019). Accordingly, the Court cannot judge the ALJ's decision based on a combination of the evidence Tinker presented to the ALJ and the evidence he presented to the Appeals Council, as Tinker requests. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) ("when the AC has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence.").

In short, the Court's review is limited to the evidence that Tinker presented to the ALJ. *See id.* Because Tinker has stated that he is "not challenging the ALJ decision" based solely on the evidence he presented to the ALJ (Oral Argument Tr. 25), Tinker cannot be entitled to relief.

**D. The ALJ considered the ailments that Tinker presented to her.**

Tinker next argues that "the ALJ failed to consider the following ailments: bilateral knee pain, anxiety, depression, PTSD, and low IQ," when making her decision. Tinker Br. 32. But the ALJ can hardly be held at fault; Tinker did not argue these ailments to the ALJ.

Tinker was represented by a non-attorney representative before the ALJ, then by an attorney before the Appeals Council and this Court. Tinker's non-attorney representative informed the ALJ that Tinker suffered from "the following severe impairments: back and neck problems, hypertension, headaches with difficulty walking due to back, dizziness and SOB[.]" R. at 240. As noted throughout this opinion, Tinker's evidence to the ALJ was focused on his back and neck pain.

Tinker's present counsel acknowledged to this Court that the non-attorney representative did not argue the additional impairments at issue here to the ALJ:

> THE COURT: And the first question I had for you is, I read The ALJ's decision and what was before the ALJ and the only argument that was made by the representative was his back and neck pains. She didn't argue at all about depression or low intellectual capacity, basically the things you have added were not argued to the ALJ, correct?
>
> MR. ALLENSTEIN: That's right. And I would say that's due to inadequate representation in addition to the claimant's low IQ.

Oral Argument Tr. 9.

The ALJ "cannot be faulted for having failed to weigh evidence never presented to [her]." *Falge*, 150 F.3d at 1323. Accordingly, this argument does not

entitle Tinker to relief.

### E. The ALJ needn't consider Grid Rule 201.10.

Tinker's final argument is that that the ALJ failed to consider Medical-Vocational Guideline ("Grid") 201.10 when deciding to deny his application. Tinker Br. 33-34. The Grid Rules, however, only become relevant in Step 5 of the SSA's five-step analysis. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 404.1560, 404.1569 (2019). As Tinker conceded during the oral argument, *see* Oral Argument Tr. 13, proper application of Grid Rule 201.10 in Step 5 is irrelevant if the ALJ properly denied Tinker's claims in Step 2.

For the reasons previously detailed in this opinion, the ALJ properly denied Tinker's application in Step 2. Accordingly, Tinker cannot be entitled to relief based on an argument that the ALJ erred in Step 5.

———

Tinker has failed to demonstrate that either the ALJ or the Appeals Council erred below. Therefore, the decision of the SSA Commissioner is **AFFIRMED**. A separate order will be entered.

**DONE** on September 6, 2019.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE